**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1942
_____

MURIEL COLLINS,
                              Appellant

v.

KIMBERLY-CLARK PENNSYLVANIA, LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-12-cv-02173)
District Judge: Honorable C. Darnell Jones, II
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 13, 2017

Before:  SHWARTZ, COWEN and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 14, 2017)
_____

OPINION*
_____

PER CURIAM

Muriel Collins appeals from an order of the District Court granting the defendant's

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  For the

reasons that follow, we will affirm.

Collins, an African-American woman and long-time employee of Kimberly-Clark Pennsylvania, LLC at its Chester, Pennsylvania manufacturing facility, was terminated after a protracted dispute that originated when she refused to honor a subpoena issued in an arbitration matter involving her co-worker Joel Horne.[1]  Because Horne was a union member, his termination was subject to the grievance and arbitration process set forth in the Collective Bargaining Agreement.  Collins was a shop steward.  She initially recommended that Horne be terminated but subsequently attended his "second step" grievance meeting as his union representative.  Then, on or about November 4, 2010, Collins was issued a subpoena to appear at his arbitration as a witness for the company. Collins did not honor the subpoena and reported to work instead.  John Flynn, the Labor Relations Manager at the Chester facility, spoke to Collins at work by telephone from the hearing to inform her that she was expected to appear and to ask her why she was not there.  After speaking with Flynn, Collins still refused to obey the subpoena.

As a result of her failure to appear at the arbitration, Collins received a five day suspension for insubordination.  She then filed grievances relating to the suspension, and called the company hotline, claiming that the company had willfully and with malice and discrimination disciplined her for refusing to commit perjury during the arbitration hearing by testifying that she supported Horne's termination when she did not.[2]

---

[1] Inasmuch as we write primarily for the parties who are familiar with the factual and procedural history of this case, we will set forth only those facts necessary to our brief discussion.

[2] Collins wanted the company to reinstate Horne and she wanted him to get help for his personal problems.

Kimberly-Clark assigned Lori Ney, a Human Resources representative, to conduct an investigation. Ney completed her investigation and concluded that no violations of Kimberly-Clark's Code of Conduct had occurred when Collins was subpoenaed; there was no evidence to support her claim that she had been asked to commit perjury and no evidence that she was the victim of discrimination in connection with the subpoena. However, based on the discrepancies between Ney's findings and Collins' alleged statements in support of her allegations, Ney concluded that Collins had provided false information during the investigation, thereby violating the company's Code of Conduct. As a result, Collins received a fifteen day suspension, a demotion of one pay level, and a "Last Chance Agreement", which, as its name suggests, provided that she could be terminated for any future company Code of Conduct violations.

In November, 2011, Collins called the company hotline, claiming discrimination and retaliation in connection with her fifteen day suspension, demotion, and Last Chance Agreement. She also complained that Sean Kane, a union vice-president, had referred to her in a voicemail as being on a "list" and used inappropriate language.[3] Kimberly-Clark assigned Chelsea Hinkle, another Human Resources representative, to investigate. Following her investigation, Hinkle concluded that there was no evidence to support Collins' claim that her new punishment was discriminatory or retaliatory. Hinkle affirmed Ney's handling of Collins' original grievance and she reiterated to Collins that

---

[3] Kane left a voicemail for Collins to remind her of the date of a grievance meeting. On it he was heard to say, "bitch, don't play with me or you'll be on the same motherfucking list as her."

she had been disciplined for providing false and conflicting information (regarding discrimination and being asked to commit perjury) in her grievance, a violation of Kimberly-Clark's Code of Conduct. Hinkle further found no evidence to support that some "list" existed or that Collins was on it, and she noted that Kane had apologized to Collins for the voicemail.[4] Collins filed a Charge of Discrimination with the Equal Employment Opportunity Commission in May, 2011, her second, which resulted in the issuance of a right to sue letter. Collins served her suspension and returned to work.

In January, 2012, Collins sent an email to the entire mill asking if anyone had knowledge of a "list" and claiming that Horne was on the "list," which spurred some complaint emails from other employees regarding Collins' misuse of company email. Collins also filed a report in the electronic system used to report workplace safety incidents in which she alleged unsafe working conditions "due to conspiracy and discrimination." Collins sent another email to the entire mill regarding the Horne termination, claiming that the subpoena she received was not valid in that she had voiced her opposition to Horne's termination. There was an additional email and an additional unsafe working conditions report of dubious merit. Kimberly-Clark finally terminated Collins on March 20, 2012 for violating the Last Chance Agreement by disrupting the workplace.

On April 23, 2012, Collins, through counsel, filed a civil action in the United States District Court for the Eastern District of Pennsylvania, alleging race

---

[4] Kane explained that he had jokingly said to another employee in his office when he left the voicemail that his wife was currently on his "shunned list."

4

discrimination, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981. Following a period of discovery, during which time Collins was deposed, Kimberly-Clark moved for summary judgment, and, in support submitted witness declarations and excerpts from Collins' deposition. New counsel was appointed to represent Collins and an amended complaint was filed. In that amended complaint, new counsel noted that an unemployment compensation referee had found that Collins had *not* falsified a claim of discrimination. In addition, the amended complaint alleged that no other similarly situated non-African American male employees receiving 15 day disciplinary suspensions were demoted or received pay cuts; and that Collins' position had been temporarily filled by a white male, Frank Brown, Jr., who had received a 15 suspension for an inappropriate drawing. In her deposition, Collins previously had also testified that Kimberly-Clark engaged in unlawful discrimination by demoting her and cutting her pay for giving false information during an investigation, while failing to demote or cut the pay of white male employees who violated the company's internet policy. Collins testified to other examples of disparate treatment, as well.

After Kimberly-Clark answered the amended complaint, an additional period of discovery ensued. Following that, Kimberly-Clark again moved for summary judgment. Collins opposed the motion and submitted numerous exhibits in support of her opposition to summary judgment. In an order entered on March 28, 2017, after an unsuccessful attempt at mediation, the District Court awarded summary judgment to Kimberly-Clark. The District Court concluded that Collins did not establish a prima facie case of race or

sex discrimination, or retaliation, and further rejected Collins' retaliation claim under § 1981.

Collins appeals pro se. We have jurisdiction under 28 U.S.C. § 1291. Collins raises several new claims in her Informal Brief, including claims covered by the "Whistleblower Protection statute," a claim for a violation of her due process rights, various tort claims, and a state law claim that she was improperly denied unemployment compensation for ten months prior to being terminated. We generally refuse to consider issues that the parties did not raise in the proceedings before the District Court, see Frank v. Colt Industries, Inc., 910 F.2d 90, 100 (3d Cir. 1990), and will do so here. Collins has forfeited these claims by failing to raise them at a point and in a manner that would have permitted the District Court to consider their merits, see Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 249 (3d Cir. 2013). In her amended complaint, Collins, through counsel, alleged only that Kimberly-Clark discriminated against her based on her race and sex, and disciplined and terminated her in retaliation for her complaints of discrimination. Our review is limited to those issues, and, with respect to those issues, Collins contends that the District Court was wrong to grant summary judgment to Kimberly-Clark, especially with respect to her retaliation claim, stating that "[a]lthough I believe race was a factor[,] I believe that retaliation was the 'main' reason for the suspensions, last change agreement, and the termination." Appellant's Informal Brief, at 4. She has further emphatically expressed her view that "a hate crime against someone with a disability [Horne] was committed," and that the subpoena issued to her was abusive and unethical. Id. at 6.

6

We will affirm. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the summary judgment record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court should grant summary judgment where the non-movant's evidence is merely colorable or not significantly probative, id. at 249-50, because "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks removed).

To prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case. A prima facie case of discrimination requires that a plaintiff show the following: (1) she belongs to a protected class; (2) she is qualified for the position; (3) she suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination, because, for example, the employer treated similarly situated employees not in the plaintiff's protected class more favorably. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S.

7

248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal Service, 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) (internal quotation marks removed). Demonstrating that employees are similarly situated involves showing that the comparators were "involved in acts . . . of comparable seriousness to" the plaintiff's acts. McDonnell Douglas, 411 U.S. at 804.

The District Court noted the appropriate legal standards, reviewed the summary judgment record, and concluded that Collins could not make a prima facie showing of race or sex discrimination and we agree. Collins did not sustain her burden regarding the Horne arbitration-related discrimination claim because she failed to show that the five day suspension occurred under circumstances that give rise to an inference of unlawful discrimination. Collins did not identify any legitimate comparators and offered no evidence at all to show that the circumstances concerning the issuance of the subpoena and the five day suspension for her refusal to honor the subpoena permit an inference of discrimination. We further agree with the District Court that Collins offered no evidence, in any event, to show that the company's reason for the five day suspension was a pretext for discrimination. Collins does not dispute that she refused to honor the subpoena, and nothing whatever in the summary judgment record shows that the subpoena was issued in order to discriminate against her.[5]

---

[5] We further agree with the District Court that Kane's voicemail does not constitute an adverse action by an employer. Kane was an officer of the union and his voicemail

8

Turning to the fifteen day suspension, pay cut and demotion, and Last Chance Agreement, it is plain from the summary judgment record that the punishment was imposed on Collins by Kimberly-Clark because Collins' original claims of discrimination and inducement to commit perjury, in connection with the subpoena, lacked a factual basis. In Kimberly-Clark's view, the unfounded claims, and Collins' subsequent attempts to bolster and support them, constituted lying during the course of an internal investigation in violation of its Code of Conduct. In arguing that she could show that the punishment meted out by the company occurred under circumstances that give rise to an inference of unlawful discrimination, Collins argued in her opposition to summary judgment that white males had received less severe punishment for similar violations of the company Code of Conduct. With respect to this claim, the District Court again concluded that Collins' assertions and summary judgment exhibits failed to show an inference of discrimination and thus a prima facie case. In particular, with respect to white male comparators who violated company policy by viewing pornography on the internet, the Court reasoned that, although a violation of internet policy and the giving of false information during an investigation are both violations of Kimberly-Clark's Code of Conduct, a jury could not properly find that the violations were comparable in nature. Similarly, the District Court found no evidence in the summary judgment record to show that the company's decision to replace Collins with a white male after she was demoted

---

relaying information about an upcoming grievance proceeding cannot be attributed to Kimberly-Clark.

evinced discriminatory animus, reasoning that the mere fact that her replacement was white and male was insufficient to show a genuine issue for trial.

Our review *de novo* of the summary judgment record leads us to the same conclusion.  See Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007) (appellate court reviews district court's grant of summary judgment *de novo*).  Collins showed that she was a member of two protected classes, that she was qualified for her job, and that she suffered an adverse employment action with respect to the 15 day suspension, pay cut and Last Chance Agreement (although we do not agree with Collins' apparent assertion that allowing her to continue to work under the Last Chance Agreement rather than terminating her employment for refusing to sign it constitutes an adverse employment action).  However, her summary judgment evidence relating to the fourth prima facie requirement -- that Kimberly-Clark treated similarly situated employees not in her protected classes more favorably -- is insufficiently probative, see Anderson, 477 U.S. at 249-50, of the requirement that she show that these adverse employment actions occurred under circumstances that give rise to an inference of unlawful discrimination.  Again, Collins' case is devoid of comparator evidence sufficient to show a genuine issue for trial, for the reasons given by the District Court.[6]

_____

[6] We note that the specific issue of Kimberly-Clark's allegedly more favorable treatment of white males who view internet pornography on company time required the District Court to decide whether this misconduct is as serious as Collins' misconduct in providing untruthful or contradictory information to company investigators.  In moving for summary judgment, and again in its brief on appeal, Kimberly-Clark submits that violating its "internet policy is not comparable to providing false information in a Code of Conduct investigation," Appellee's Brief, at 21.  Under the circumstances of this case, the judgment made by the company about the relative seriousness of the two offenses is

10

Next, Title VII prohibits retaliation by making it unlawful for employers to discriminate against "any individual . . . because he has opposed any . . . unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish retaliation, a plaintiff must proffer evidence to show that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006). To establish causation at the prima facie stage, a plaintiff must introduce evidence about the "scope and nature of conduct and circumstances that could support the inference" of a causal connection. Farrell v. Planter's Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). "Where the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality and defeat summary judgment." LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (internal quotation marks removed).

In rejecting Collins' assertion that there was a genuine issue of fact for trial in connection with her retaliation claim, the District Court carefully and thoroughly examined the temporal links between the adverse actions, including the unpaid suspensions, the demotion, the pay reduction, the Last Chance Agreement, and the

sufficient to show that there is no genuine issue for trial, in the absence of any rebuttal evidence to show that the company's position is disingenuous or insincere.

11

termination; and Collins' protected activities, including her EEOC Charges of Discrimination, and her use of the company hotline and internal grievance proceedings to pursue her claims of discrimination.[7]  The Court concluded that there was nothing unusually suggestive of a causal connection, see LeBoon, 503 F.3d at 232.  Collins has not specifically challenged the District Court's temporal links analysis in her Informal Brief.  Moreover, in the absence of other summary judgment evidence of a causal connection, we agree with the District Court's overall conclusion that Collins did not make out a prima facie case of retaliation with respect to the unpaid suspensions, demotion, pay cut, and Last Chance Agreement.  With respect to Collins' termination, the District Court, in addition to addressing whether she had made a prima facie case, further considered whether Kimberly-Clark's reasons for terminating her were a pretext for retaliation.  To prove causation at the pretext stage, the plaintiff must show that she would not have suffered an adverse employment action "but for" her protected activity. See University of Texas Southwest Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013).[8]  The District Court concluded that the termination would have occurred regardless of any alleged retaliatory motive, and we agree.  Collins' email activity and her use of work safety complaints to press her baseless allegations concerning the

---

[7] The District Court concluded, and we agree, that Collins' mass email to other employees did not constitute protected activity. See 42 U.S.C. § 2000e-3(a).  In addition, the District Court properly concluded that Collins' work safety complaints were not protected activity, even though she may have used them to communicate her discontent about personnel issues. Id.

[8] The burden for establishing causation at the prima facie stage is less onerous, as the District Court acknowledged.

subpoena and her feelings about Horne's arbitration were disruptive and the reason for her termination.[9]

For the foregoing reasons, we will affirm the order of the District Court awarding summary judgment to Kimberly-Clark.

---

[9] For the reasons given by the District Court, Collins' retaliation claim pursuant to § 1981 also presented no triable issue.

13